UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
25-cv-2502-JRT-DLM
Antonio Dupree Wright
7600 525th Street
Rush City, Minnesota USA

Plaintiff/Claimant,

vs.

RAMSEY COUNTY, MINNESOTA; CITY OF SAINT PAUL MAYOR, MELVIN CARTER, in both capacities; SAINT PAUL POLICE DEPARTMENT CHIEF, In both capacities; RAMSEY COUNTY DISTRICT COURT CHIEF JUDGE, In both capacities; RAMSEY COUNTY DISTRICT ATTORNEY, JOHN J. CHOI, In both capacities; RAMSEY COUNTY DISTRICT COURT ADMINISTRATOR, In both capacities; RAMSEY COUNTY SHERRIFF, In both capacities SGT. SOREN MAHOWALD, In both capacities; MARK REDING, In both capacities; DEREK FITCH, In both capacities; RICHARD BERTHOLF, In both capacities; ELENA L. OSTBY, In both capacities; GOVERNOR TIM WALZ, In both capacities; JANE DOE 1,2,3, In both capacities; JOHN DOE 1,2,3, In both capacities; AMONGST OTHERS,

Defendants[*1]

---

Plaintiff, Antonio Dupree Wright, for himself[2], hereby brings this action(s) against the defendant(s) named infra and supra and alleges as follows:

### INTRODUCTION

1.)   This is an AMENDED COMPLAINT for civil action demanding
...

### FOOTNOTE

1.) This also, is a suit against all public officials "Public Hazard Bond", and(or) other liability protection insurance/bond.
2.) Plaintiff is assisted by Legal Assistant MusaSubRosa (Secured Party Creditor)

damages brought under 42 U.S.C Sec. 1983, 1985, 2000d (Title VI of the Civil Rights Act), 14141 (Pattern-or-practice) provision the Violent Crime Control & Law Enforcement Act of 1994 & Sec. 3789d (The Omnibus Crime Control and Safe Streets Act of 1968); the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, the Emancipation Proclamation, C.F.R Sec.42.104(b)(2); the Minnesota Constitution, Minnesota Human Rights Act, Minnesota Common Law; amongst others arising from Wright's wrongful incarceration, malicious prosecution and false imprisonment, excessive bail, disparagement, fraud, police misconduct, abuse of process, defamation, tortuous interference with prospective economic advantage, intentional infliction of emotional distress, amongst other(s) all of which stems from Ramsey County District Court Case No.:62-CR-22-5116.[3]

## JURISDICTION

2.) The court has Subject Matter Jurisdiction pursuant to 28 U.S.C §§ 1331 and 1343 because the action arises under federal law as cited above and below. The court has supplemental jurisdiction over state law claims under 28 U.S.C § 1367.

## VENUE

3.) Venue is proper under 28 U.S.C § 1391 because the events giving rise to these claims occurred in Ramsey County, Minnesota, within the Distric of Minnesota.

## PARTIES

4.) Plaintiff: Antonio Dupree Wright is a citizen of Illinois at all times relevant to this matter, with only temporary residences in the state of Minnesota.

Defendant(s): Ramsey County is a municipal corporation and political subdivision of the state of Minnesota. Governor Tim Walz is the highest official in the state of Minnesota.

Defendant(s): City of Saint Paul is located in Minnesota. Defendant Melvin Carter is the current Mayor of the city.

Defendant(s): Saint Paul Police Chief is the highest ranking officer for the Saint Paul Police Department, overseers of defendant(s) SGT. Soren Mahowald, Mark Reding, amongst others.

## FOOTNOTE

3) Plaintiff was falsely accused, arrested, detained, detentioned and persecuted for the shootings of (6) person(s), (3) of which died and (2) of which were severely injured. Wright was subsequently acquitted of all charges that should have never been brought.

2

Defendant(s); Ramsey County District Court Chief Judge is the highest ranking officer for Ramsey County District Court. Judicial Officer Elena L. Ostby is a official for the Ramsey County Distric Court.

Defendant(s): Ramsey County District Attorney John J. Choi, is the highest ranking official of the District Attorneys office and Derek Fitch is a administer of justice employed by the Ramsey County District Attorneys office.

Defendant(s): Ramsey County Sherriff, is the highest ranking officer of the Ramsey County LEC.

Defendant(s): Amongst others...

## CRIME

5.) SPPD were sent to 951 Case Avenue, St. Paul in the county of Ramsey on September 4, 2022 on reports of a shooting. The officers arrived to find a massacre had occurred. Three individuals were brutally murdered, and three others lives were pursued by the killers wrath.
   951 Case Avenue was a well known drug house, and toxicology reports from the autopsies revealed heavy drug use in all the deceased victims. The living victims admittedly were addicts under the influence during the horrific crime. One of the vitims (SA) survived and initially identified the shooter as a alleged drug dealer he owed money too. SA claimed to know the shooter very well and didn't think he would commit the horrible act over $500.00.
   The drug dealer was suspected to be Antonio Dupree Wright, a man (SA) claimed to know as "D" and "Figg". SA's initial statement was recanted prior to trial and during trial. The description that the witnesses (survivors) gave detectives was a man with dreads that arrived on a scooter, masked with a tan glock that was left at the scene of the crime. Survivor (CS) identified the shooter as having twists((of which Wright didn't have at the time of the crime). CS picked a shooter out of a line-up conducted by detective defendants that wasn't the plaintiff.

## STATEMENT OF PROBABLE CAUSE

6.) Probable Cause complaintant Mark Reding (Defendant Reding) signed an affidavit moving Ramsey County District Attorneys office (John J. Choi) to approve the prosecution of the crime referenced above on or about 09/07/2022. Oddly, defendant Reding electronically signed the request for prosecution @10:44am and Derek Fitch (Defendant Fitch) assistant attorney of John J. Choi (Defendant Choi) electronically signed the complaint for approval @10:40am, an obvious irregularity in the P.C process.
   Shortly after, defendant Fitch and Reding for the benefit Chief)in the interest of Choi and Saint Paul Police Chief (SPPD

Chief) or acting through their own free-will, initiated the prosecution of Wright for the crime. Defendant Elena L. Ostby then took the unprecedented step of issuing a $25,000,000,000.00 warrant in the County of Ramsey under the seal thereof.

The statement of P.C is available in the Ramsey County District Court Case No. 62-CR-22-5111. The statement enlists Wrights alleged gang affiliations, alleged criminal history, the crime, the findings of the medical examiner, the witness (survivors) statements given the day of the crime, unrelated crime(s), the fact that a number associated with Wright puts him in Chicago amongst other things.

## CHARGE

7.) Wright was charged with 2nd Degree intentional murder Minn.Stat. § 609.19.subd.1(1);(3) separate counts and (3) separate counts of 2nd Degree attempted murder in violation of Minn.Stat. § 609.19, subd.1(1). Wright was not indicted for 1st Degree premeditated murder, unusually.

## INVESTIGATION

8.) Defendants Mark Reding, SPPD Chief, Fitch, Choi, and individuals under their control or accompanied by them, collected evidence from the crime or in light of the crime for the purpose of identifying the perpetrator(s). Reding and Fitch or officers under their control spoke to survivor, SA, shortly after his first statement implicating Wright, later recanting his allegation that the shooter was Wright. SA informed Reding and(or) Fitch, or other officers under their control that he was under the influence of fentanyl when he initially spoke to them. SA assured the officers that the shooter could not have been Wright because the person he saw had dreadlocks. Prior to trial, SA told the officers Wright was not the shooter, however the defendants above did not record the recanted statements.

Several witnesses[a], including Wrights aunt informed detectives including (but not limited to) defendant Reding that Wright was in Chicago, IL the night of September 4, 2022. Richard Bertholf, (defendant Bertholf) Certified Forensic Video Technition with the SPPD retrieved video from plaintiffs mothers residence that revealed the truth of Joyce Simpsons account that Wright was at her residence approx. 4½ hours after the massacre.

## FOOTNOTE

a). Jane Doe (A,B); John Doe (A,B)

... Defendant Bertholf reprogrammed the surveillance system at Simpsons house to operate on a time laspe.

## TRIAL EVIDENCE

9.) The Honorable Kelly L. Olmsted, judge of the Ramsey County District courthousepresided over the trial on August 21, 2023. Wright was represented by Joseph Friedberg and the (defendant), Ramsey County was represented by Hassan Tahir and Nori Wieder. The trial was a Judge trial (bench trial), plaintiff waived his right to a jury trial.

At trial the states theory was that Wright was the shooter motivated by a preconceived notion that the victims were federal informants working against his alleged drug dealing interests. The evidence presented by the state is documented in the Ramsey County District Courts findings of fact filed: 9/26/2023 3:42pm signed by: Judge Kelly L. Olmsted.

The court found at trial,

"16.) Ms. Anderson's analysis was that there was an insufficient amount of DNA on the swabs from the firearm to perform profiling.

17.) Ms. Anderson concluded that the swab taken from the magazine tube had a single source DNA profile that came from a female(...)

20.) Colin Brandhorst, a certified latent print examiner with the SPPD's forensic services unit examined the print that Mr. Nyhus recovered from the glock and concluded that it was insufficient of value for comparison.

31.) In court, Mr. Anderson identified defendant as "D", but testified that he did not think that defendant had committed the shootings. He stated that he had thought it was him (D) at first, but when he greeted him as "D" and the shooter said "I'm not D", he realized it was not him.

32.) Mr. Anderson testified that the shooter had dreads and was wearing a mask that covered up to his nose when he arrived at the house and entered the living room.

33.) Mr. Anderson testified that he had been smoking fentenyl with Angelica Gonzalez all day, and that he was under the influence when the shooting happened.

34.) Mr. Anderson testified that he was under the influence and/or going through withdrawal when he gave his prior statements to the police, and that he did not remember what he had told them.

42.) Mr. Steward testified that prior to the shooting he had looked at the shooter for a few seconds longer than Mr. Anderson had.

45.) Officers administered a photographic lineup to Mr. Steward.[...]Mr. Steward did not identify the photo of the defendant as the shooter. Instead he identified as a different individual, and did so with 95% confidence.

46.) Mr Steward did not identify the defendant as the shooter in court

47.) Mr. Alexander described that the shooter had dreadlocks which he could see because they were not tucked into the mask.

50.) Mr Alexander had known the defendant for three to five months at the time of the murders; he knew him from selling him stolen goods. He testified that there was no question in his mind that the defendant was not the shooter.

63.) Defendants aunt Diane Wright testified that the defendant visited her home on Natchez Avenue in Chicago proper around 10am on the Sunday of Labor Day weekend 2022 (September 4).

64.) Defendant's mother Joyce Simpson testified that defendant visited her at her apartment in the Monclare Senior Residence in Chicago the night of September 4, 2022. She identified the surveillance video of her apartments entryway from that evening (Ex.125), and identified defendant as the individual shown entering the apartment building @ time stamp 8:58pm. She testified that he arrived around 9pm and stayed about halfan hour, that he then went upstairs to visit his grandmother, then that he came back to her apartment after 10pm.

65.) The surviellance video of the defendant in the entryway to his mothers apartment the night of September 4 shows defendant with a short-cropped hairstyle, without dreads or twists.

66.) Defense investigator Joe Collins testified that he drove from the Twin Cities to Joyce Simpson's address in Chicago in 2023, and that he estimated that the trip from 951 Case to that address took about six ½ hours.

67.) There was no sworn testimony or forensic evidence offered at trial identifying the defendant as the perpetrator of this horrific crime.

## DETENTION

Wright was housed in the Ramsey County Law Enforcement Center pending trial. As a general result of incarceration in the jail, Wrights health deteriorated. Aside from general health issues cause by incarceration, the plaintiffs M.S (Multiple Sclerosis) went untreated while he was housed in R.C L.E.C even though he sought treatment.

Wright Also sought dental help from the jail that led to the jail pulling the wrong tooth, and failing to remedy the tooth pain. Wright also had other health issues that went untreated, such as, Vitamin D deficiency, Vision Impairment, Mental health deterioration, and others.

Wright spent a tremendous amount of money while incarcerated for use of the phone, canteen items, and others. Aside from things purchased inside the L.E.C, detention led plaintiff to spend money on caretakers for his animals (dogs), residences, vehicles, businesses, and more. Upkeep of Wrights property while incarcerated exceeds $20,000.00.

Detention interfered with Wrights romantic relationship with Jane Doe, causing the relationship to fail. Wrights relationships with his kids and family suffered tremendously during incarceration because communication and general physical interaction was unavailable causing a breakdown in connection.

## ECONOMIC

11.) Wrights businesses (Food Truck, car dealing, music production, and other enterprises were interrupted and/ or had to be terminated due to the charges in this matter. Plaintiff incurred losses in excess of $150,000,00. Plaintiff also incurres property losses in excess of $175,000.00 (vehicles, clothes, jewelry, animals, and more.

## CUSTOM(S)

12.) Pervasive conscious & unconscious racial bias is prevalent in Ramsey County. "Social psychologists have repeatedely proved that prosecutors include pernicious racial stereotypes unjustly tying black men with criminality and dangerous tendencies, which ultimately results in the administrators of justice to consciously or unconsciously treat black men more punitively. See eg. Jennifer L. Eberhardt et al., Seeing Black: Race, Crime, and Visual Processing, 87d. Personality & Soc. Psych, 876, 889 (2004)"Even in the face of substantial exculpatory evidence in a case the defendants, Bertholf, Ostby, Fitch, Reding, Mahowald, for the benefit of their superiors custom or their, own, the officers were motivated by racial bias, persuaded by pattern to associate blacks (plaintiff) with crimes of violence. See eg. Cynthia Willis Esqueda, "European American Students Perceptions of Crimes Committed by Five Racial Groups", 27 J. Applied Soc. Psych 1406 (1997)

Law[b] enforcement defendants Fitch, Reding, Mahowald, Bertholf, Ostby, exhibited a custom of hole effect bias[d] in dealing with black defendants/ suspects (plaintiff). Their decision making was influenced by implicit racial bias. Role effect bias is so pervasive through Ramsey County and the state of Minnesota, defendants Governor Walz, Melvin Carter, SPPD Chief, Leonardo Castro (R.C. Chief Judge)[c], John J. Choi, and others are guilty of exhibiting and operating under the same custom the law enforcement officers are guilty of, rather conscious or unconscious ...

## FOOTNOTE

b) Ramsey County Sherriff
c) Ramsey County District Court Administrator
d) Role effect bias

7

...racial bias, and any other impermissable bias. See eg. "Social Psychologists have long recognized the influence of implicit racial bias on decision making, and law enforcement experts have similarily acknowledged the impact of implicit racial bias on law enforcement decisions." See eg. "R. Richard Banks, Jennifer L. Eberhardt & Lee Ross, Discrimination and implicit bias in a Racially Unequal Society" 94 Cal. L. Rev. 1169 (2006): Traay G. Grove, Implicit Bias and Law Enforcement, "The Police Chief (October 2011)".

Again the mole of racial bias extends to all defendants a-like. Extensive research has been done on the topic, See "University of Minnesota Law School; Article Race, Racial Bias. and Imputed Liability Murder" by - Perry Moriearty, Kat Albrecht and Caitlin Glass - " Deep seated narratives falsely associating 'Blackness', violence, and criminality endure as a legacy of slavery and convict leasing. Further reinforced through persistent racial inequity in the criminal legal system." See eg. "Khalil Jibran Muhammad, The Condemnation of Blackness: Race; Crime and the Making of Urban America 4 (2010)" The narritives produce cognitive biases that can impact decision making. (This information again, is cited from the article above).

Not only was racial bias the moving force causing the injuries, damages, and rights violations, a failure-to-train against the bias and other failure-to-train issues caused the challenged results, amongst other things.

A custom Scholar(s) are familiar with is racial bias thats casually connected to the systemic results of this case, mass incarceration, excessive sentences, disproportionate disparageing against blacks in the criminal justice system, amongst other things is a custom held to circumvent the Emancipation Proclamation. (Plaintiff does not rely on this allegation to prove his claims). This custom is lawfare against Wrights protected class.

## GENERAL RACIAL DISPARITIES

13.) In Ramsey County and the State of Minnesota, drivers of color are more likely to be pulled over than whites. See "Da tadive: Racial Disparities in Minnesota traffic stops", St. Paul Pioneer Press, July 8, 2016, [https://www.twincities.com/2016/07/08/data-dive-racial-disparities-in-minnesota-traffic-stops/]

Racial disparities in the County of Ramsey Minnesota continues to result in a gross racial wealth gap that is greater than before the passing of the Civil Rights Act of the 60's. See "Dionnissi Aliprantis and Daniel R. Carroll - What is Behind the Persistence of the Racial Wealth Gap?". Federal Reserve Bank of [Clevelandfed.org/en/newsroom-and-events/publications/economic-commentary/2019-economic-commentaries/ec-201903-...]

Unemployment Rates (racial disparities) See. MinnPost, June 19, 2018, [https://www.minnpost.com/good-jobs/2018/06/yes-unemployment-rate-among-black-minnesotans-record-low-its-still-almost-double-s/].

Housing disparities. See [ startribune.com/half-of-black-workers-in-minnesota-have-lost-work-during-pandemic/571820441...]

Disparities in State Procurement, See[ https://mn.gov./admin-stat/documents/keen_independent_2017_Minnesota_joint_disparity_study_phase_1_report.pdf]

Disparities in Education, See[ https:// www.npr.org/sections/money/2020/06/02/867195676/minneapolis-ranks-near-the-bottom-for-racial-equality...]

Health and Human Services Inequities, See [ https://www.health.state.mn.us/communities/practices/healthymnpartnership/docs/2017MNstatewidehealthassessment.pdf ].

Environmental Disparities, See [ https://www.pca.state.mn.us/air/disproportionate-impacts-minnesota ].

The general disparities cited above are referenced in the HOUSE SELECT COMMITTEE ON RACIAL JUSTICE REPORT TO THE LEGISLATURE OF DECEMBER 22, 2020. The report also includes data for disparity catagories, tobacco, dental, public saftey, family separation, COVID hospitalization & mortality rates, maternal child mortality and morbiolity, amongst other things.

General racial disparities have been proven to be casually connected to the criminal justice racial disparities and given insight into the minds of the decision-makers officially controlling the system.

## CRIMINAL RACIAL DISPARITIES

14.) "Minnesota has one of the lowest incarceration rates in the country, but it has an especially high number of people under correctional control. At the beginning of 2021, about 93,000 people in the state were under community supervision -the sixth- highest rate in the nation, according to the bureau of justice statistics. (DANIELLE KAEBLE, PROBATION & PAROLE IN THE UNITED STATES, 2021 19(Feb, 2023)"

"Minnesota also has some of the worst correctional disparities in the country. Though black Minnesotans make up 7.6% of Minnesotas population, they comprise of nearly 36% of the states prison population. [ Census.gov/quickfacts/mn ] Black/white racial disparities in prison populations are twice the national average, and black Minnesotans are incarcerated at nearly 10 times the rate of white Minnesotans. (eg. ASHLEY NELLIS THE SENT 'G PROJECT, THE COLOR OF JUSTICE: RACIAL AND ETHNIC DISPARITIES IN STATE PRISONS 10(2021)) - Racial disparities among those on community supervision programs are also significant. Black Minnesotans make up 19% of those on probation and 26% of those on supervised release. (MINN. DEPT OF CORR., MINN. STATEWIDE PROB. & SUPERVISED RELEASE OUTCOMES 7 (2021)[...] In 2020, the chair of the Minnesota Sentencing Guidelines Commission addressed to the continued disproportionate representation of black and indigenous defendants in the Minnesota criminal legal system in blunt terms: "Though I would not expect the porportions to be exactly equal across three populations, if there were no bias in the system, I would expect the numbers to be similar. The fact that they are so disporportionate tells us that insidious forces are at work. ( Kelly Lyn Mitchell, Taking Steps to Address Racial Disparities in Sentencing, 33 FED.SENT. 'G REP. 1,1 (2020)).

Althoughthe disparageing of blacks (plaintiffs class) referred above is not directly supportive of the actions and conduct taken by the defendants for the specific result reached in this case, it is casually connected to the result as an encouraging factor or provides insight into the intentions of the defendant accused of role effect bias. See also, " Over the past several decades, hundreds of studies have documented racial and ethical disparities at multiple stages of criminal legal processing in jurisdiction across the country. (eg. see Spohn Cassia, Race, Crime, and Punishment in the Twentieth and Twenty-first Centuries, 44 CRIME & JUST. 49, 52 (2015) (documenting racial disparities in multiple areas of criminal processing and punishment)[...] Robert Brame et al., Demographic Patterns of Cumulative Arrest Prevalence by Ages 18, and 23, 60 Crime & Delinq. 471, 477 (2014)(finding that police differentially arrest people of different races for the same offense).

## COUNTS

15.) COUNT 1: 42 U.S.C § 1983 and/or 1985 - Malicious Prosecution (Against: Ramsey County, MN; SPPD Chief; John J. Choi; Melvin Carter; Ramsey County Court Administrator;Ramsey County Sherriff; Sgt. Soren Mahowald; Mark Reding; Derek Fitch; Richard Bertholf; ElenasL. Ostby; Gov. Walz; Jane Doe 1,2,3; John Doe;1,2,3; amongst others), in both capacities, liable for the injuries and damages listed infra & supra
COUNT 1 also includesaa Common Law Malicious Prosecution claim and theory that should be paid out and prosecuted in COUNT 1.5 separately.
- Plaintiff Incorporates by reference all preceding and suceeding paragraph(s).

16.) COUNT 2: 42 U.S.C §§ 1983 and/or 1985 - Excessive Bail (Against: Ramsey County, MN; Ramsey County Court Administrator; Elena L. Ostby; John J. Choi; Derek Fitch; Ramsey County Chief Judge; amongst others), in both capacities.
COUNT 2:also includes a Common Law Abuse of Process claim and theorytthat should be paid out and prosecuted in counts 2.5 separately.
- Plaintiff Incorporates by reference all preceding and succeeding paragraph(s).

17.) COUNT 3: 42 U.S.C § 1983 and/or 1985 - Violation of the Equal Protections Act (Against: Ramsey County, MN; SPPD Chief; John J. Choi; Melvin Carter; Ramsey County Court Administrator; Ramsey County Sherriff; (Against all defendants)), in both capacities.
COUNT 3 also includes a State Conferred Rights claim and theory that should be paid out and prosecuted separately in both capacities. (See "Liability" section for more info.)
- Plaintiff incorporates by reference all preceding and succeedingnparagraph(s).

18.) COUNT 4: 42 U.S.C § 1983 and/or 1985 - Due Process Claim (Against: ALL DEFENDANTS) in both capacities. (See "Liability" section for more info.)
COUNT 4 also includes an Abuse of Process claim against all defendants held liable and should be paid out and prosecuted in count 4.5, in both capacities. (See "Liability" section.)
- Plaintiff Incorporates by reference all preceding and succeeding paragraph(s).

19.)   COUNT 5: 42 U.S.C § 1983 & 1985 - Violent Crime Control and Law Enforcement Act; The Omnibus Crime Control and Safe Streets Act (1968); Title VI of the Civil Rights Act (1964)(Against: Ramsey County Sherriff; SPPD Chief; Gov. Walz; Melvin Carter; City of Saint Paul; Ramsey County District Attorney; Ramsey County District Court Chief Judge; amongst others))In both capacities, liable for the damages and injuries.
COUNT 5 also includes a state law claim under Minn. Stat. § 363A.01-02(1)(3)(4), amongst others. -HHuman Rights Act(Against: SPPD Police Chief and officers under his authority; Ramsey County District Attorneyy; Gov. Walz; Melvin Carter; amongst others.) Defendants are sued in both capacities, liable for damages, injuries, and rights violations.
- Plaintiff Incorporates by reference all preceding and succeeding paragraph(s).

20.)   COUNT 6: 42 U.S.C § 2000d, §14141, §3789d - Human Rights Act; Violent Crime Control and Law Enforcement Act; The Omnibus Crime Control and Safe Streets Act; Title VI of the Civil Rights Act (1964) (Against: Ramsey County Sherriff; SPPD Chief; Gov. Walz; Melvin Carter; City of Saint Paul; Ramsey County District Attorney; Ramsey County District Court Chief Judge; personel under SPPD Chief's authority)
- Plaintiff incorporates by reference all preceding and succeeding paragraph(s).

21.)   COUNT 7: 42 U.S.C § 1983 - Denial of Medical Care (Against: Ramsey County Sherriff; Ramsey County; Jane Doe 1,2,3; John Doe 1,2,3) in both capacities.
COUNT 7 also includes a Common LawNNegligence, gross negligence claim and theory that should be paid out and prosecuted in count 7.5 separately. *Defendants are the same as in COUNT 7. Sued in both capacities.
- Plaintiff incorporates by reference all preceding and succeeding paragraph(s).

22.)   COUNT 8: State Law Claim - Intentional Infliction of Emotional Distress (Against: SPPD Chief and officers listed as defendants; Ramsey County District Attorney and prosecuting attorney defendant(s); Elena L. Ostby; any defendant found to be directly aware of the emotional distress; any defendant that should have been aware thereof.) All defendants are sued in both capacities, liable for injuries, damages listed infra supra.
-Plaintiff incorporates by reference all preceding and succeeding paragraph(s).

23.) COUNT 9;SState Law Claim-Tortious Interference with Prospective Economic Advantage (Against: SPPD Chief and officers; Sgt. Soren Mahowald; Elena L. Ostby; Mark Reding; Derek Fitch; John J. Choi; amongst others), all defendants are sued in both capacities and liable for injuries and damages listed infra & supra.
- Plaintiff incorporates by reference all preceding and succeeding paragraph(s).

24.) COUNT 10: State Law Claim - Defamation & Reputational Harm (Against: Jane Doe 1,2,3; John Doe 1,2,3) all defendants are sued in both capacities and liable for injuries, damages, and rights violations.

## LIABILITY[e]

25.) DEFENDANT 1 - Ramsey County,MN, a municipality is guilty /liable of COUNTS: 1,1.5,2,2.5,3,3.5,4,4.5,5.5,6,7,7.5, 8,9. Ramsey County is guilty of the COUNTS listed above through the individuals actions in their official capacity. Ramsey County carried a custom of racial bias that led to ALL COUNTS. The defendant failed-to-train all defendants under its authority to act in the interest of true justice, not the illusion of justice. The County infringed upon the plaintiffs FOURTH, EIGHTH, FIFTH, and FOURTEENTH AMENDMENT rights. His human rights, his state created rights, and all other rights listed in this complaint aswell as those not.

26.) Aside

26.) Aside from 42 § 1983 & 1985, Ramsey County is liable under the supervisory liability theory, amongst others. The county held a patterned-practice of failure-to-remedy the racial bias wrongs. The county has a history of being sued for racial issues. (See other defendants for details more details)
- Plaintiff incorporates by reference all preceding and succeeding paragraph(s).

27.) DEFENDANT 2 - City of Saint Paul, a city is guilty and liable for and under the same theories listed for Ramsey County, MN
-Plaintiff incorporatesby reference all preceding and succeeding paragraph(s).

### FOOTNOTE
e) All defendants received some form of federal benefits. All defendants are guilty/liable of/for aiding and abetting... (concerted action[s])

28.) DEFENDANT 3 - Governor Walz, is guilty of COUNTS 1,3 ,3.5,4,5,6,9,10. Walz is the highest ranking official in the state of Minnesota and the overseer of all state employees during the prosecution of the relevant case. DEFENDANT 3 was informed and well aware of the raciall disparaging against plaintiffs class that led to the malicious prosecution, abuse of process, discrimination, violation of human rights, financial loss, emotional distress, amongst other things. Walz failed to remedy after being aware of racial disparaging and/or failed to manage subordinates who operated a role effect bias against blacks in criminal and other commercial and state involved processes.

29.) Walz conspired with other defendants through tacit authorization or direct involvement, to infringe upon Wrights federal and state constitutional rights against illegal search and seizure. (4th Amendment to the U.S Constitution; and state equivalent); Discrimination(Equal Protections Act; and state equivalent); Human Rights; among others.

30.) Walz is not entitled to immunization operating under the color of state law to circumvent federal rights.
- Plaintiff incorporates by reference all preceding and succeeding paragraph(s).

31.) DEFENDANT 4 - Melvin Carter III, is guilty/liable of/for COUNTS 1,1,5,2,2,5,3,4,5,6,8,9. Carter is the highest ranking official in the City of Saint Paul, and the overseer of all city employees during the prosecution of the relevant case. DEFENDANT 4 was informed and aware of the racial disparaging and bias (role effect and racial bias) through formal acknowledgement, tacit authorization and or he should have been aware. As a result of Carter's failure to manage subordinates (SPPD defendants; and others)

32.) Carter and his subordinates operated under a custom of role effect and racial bias that led to plaintiffs damages, injuries, and rights violations.
- Plaintiff incorporates by reference all preceding and succeeding paragraph(s).